*NEW-YORK, May, 1805.*

E. Stevens
v.
C. I. Company.

## Ebenezer Stevens *against* the Columbian Insurance Company.

THIS was an action, on an open policy, for the recovery of 16,000 dollars, underwritten on the freight, by charter party, of the ship *Swan* from the *Havanna*, to *New-York.* A total loss and the plaintiff's right to a verdict were admitted ; but the defendants contended, that as the plaintiff would, had the vessel arrived safe, have necessarily been put to the expense of wages and provisions, though the whole freight would have been due, so, in case of a total loss, the amount of those wages and provisions was what the insurers were entitled to deduct.

*Under a policy on freight, the gross amount is, on a total loss, the sum to be recovered.*

The jury having, by consent, found for the full sum mentioned in the policy, it was now brought before the court to determine, whether he ought to recover the gross amount as subscribed for in the policy ; a specific proportion only ; or the actual net freight after making the deduction insisted on.

*T. L. Ogden* for the plaintiff. Freight is the compensation, or hire paid to the owner of a vessel, at the termination of the voy-

age, for the use of his ship. The contract between him and the underwriter, is, that he *shall* receive it notwithstanding any of the perils insured against. In the present case then, the amount the plaintiff would have to receive, is *that* specified in the charter party, and *that* sum is the subject of the insurance in the policy on which this action is brought. Upon these principles, what has the underwriter to pay in case of a total loss? The value of the subject insured at the commencement of the risk, as it is settled by his subscription. Practice on other policies shews this. In the case of insuring a ship, a month's wages and provisions are allowed in her outfit. These, if she return safe, are consumed and expended, yet no deduction was ever attempted, because the owner would, at the end of the voyage, receive the bare vessel. If the principle be allowed against the freight, it must equally operate against the body of the ship. Nay, it will authorize subtracting the very repairs that may be required in consequence of deterioration during the voyage. *Shawe* v. *Felton*, 2 *East*. 109, is in point to shew that the value of the subject insured, as it stood at the commencement of the voyage, is what the underwriter upon a policy to the full amount, must pay if a total loss take place. The case was this. A policy* was effected on ship and goods for an African voyage. The goods were invested in slaves. The vessel sunk in the very port of delivery, but the slaves were saved. The underwriters contended for a deduction to the value of the slaves purchased by the cargo, but the court held the plaintiff entitled to a recovery without any deduction. The principle is, wherever the right to freight has commenced, the whole is due. *Thompson* v. *Taylor*, 6 *D. & E.* 478, is stronger than the present. There the insurance was, at and from *London*, to *Teneriffe* and the *West-India Islands*, upon freight under a charter party, for a cargo of wine, to be taken in at *Teneriffe*. The vessel sailed and was captured on her way to *Teneriffe* before she had a single pipe of wine on board, yet the insured recovered without deduction; because, as the right to freight, though inchoate, had commenced, the underwriter was bound to pay all that the insured would have received, had the accident not occurred. If this be not the law, the question then is, what must be the measure of deduction? If the seamen's wages and provisions, then in almost every case, there must be a law suit, for in hardly any two, will they be alike. Besides the amount of these for one month, is always covered by the policy on the ship. Suppose the vessel captured with-

* It was a valued one.

in that time, just on entering her port of destination, so that the voyage would clearly have been performed within the month, must the insurer on freight pay nothing? Even a specific proportion may be far from attaining the ends of justice. In some cases, it might be more, in some less, than a compensation.

NEW-YORK,
May, 1805.

E. Stevens
v.
C. I. Company.

*Pendleton*, contra. On this precise point, their being neither any determination, nor usage, it must be considered and decided on principle alone. The question is what ought to be recovered, on a contract which is purely one of indemnity? The foundation of all such, is the maxim of the civil law, which says, no man shall gain by the loss of another. The compensation, therefore, must be no more than the injury actually sustained. 2 *Marsh.* 529. 2 *Emer.* 221. " Insurance is not a lucrative contract; its only " object is to indemnify the insured from loss." The receipts on an accident, ought to be no more than they would be on safe arrival. The reason why the deterioration, and repairs of a vessel are not deducted, by the underwriter, from the amount of the policy on a ship, is, that had she returned, they would have been actually compensated for, by the freight. The insurer, therefore, pays no more, than the insured would have received. Vessels and goods, have a value at the very outset of the voyage, but freight has none. It does not acquire any till the termination of the adventure, and that is the reason, some writers term insurances on this kind of interest, wager polices. But what is freight, when the voyage is concluded? Nothing more than the surplus, after paying wages and provisions. If then on a loss, the insured receive that surplus, and those wages and provisions, he gains by the loss in contradiction to the authorities cited. This affords a strong temptation to fraud. Suppose a ship, insured for an East-India voyage, at 20,000 dollars, her freight at 16,000 dollars, of which the necessary charges of pilotage, wages and provisions, amount to 6000 dollars. The net sum without any misfortune would be 10,000 dollars. But if, according to *Emerigon*, an officious accident intervene, one or two days after sailing, the insured would clear within a trifle of 6000 dollars by the mischance. The court therefore, will limit the recovery, so as to do away this inducement to fraud. To prevent this as much as possible, the French law obliges the assured always to keep at his own risk one tenth of the property insured. What is at risk, constitutes the only interest in a policy. More than that, certainly ought not to be recovered. Wages are not at risk,

NEW-YORK, for by a loss they are saved. In cases of bottomry, the lender
May. 1805.
can insure only his principal, but not his interest ; 1,or can the bor--
E. Stevens    rower cover more than the surplus value of his vessel, after de-
C. I. Company. ducting the sum advanced. In an open policy, freight, accor-
ding to *Millar* 247, means " the actual net freight." *Marsh*. 467,
recognises this idea, in stating the amount freight shall contribute
for, in a case of general average. We have adopted the same prin-
*1 Vol. 573.    ciple; and in the case of *Leavenworth* v. *Dale*,* settled it at one half.
If the owner is to contribute no more, then he ought to recover for
no more. *Millar*, page 231, states the English practice to be ac-
cording to the rule contended for. In an insurance on freight
generally, a total loss is calculated to be the net freight, or posi-
tive gain. Otherwise the insured would gamble for the residue,
By referring to *Marshall*, the case of *Thompson* v. *Taylor*, appears
to have been on a valued policy. The arguments, therefore. de-
duced from it, do not apply. There is no uncertainty in taking
an *aliquot* part of the freight as the amount of expenses, because
in all cases, the proportion will be the same.

     *D. B.* and *T. L. Ogden*, in reply. The right of deduction con-
tended for, is said to be founded on the nature of a policy of in-
surance, which being a contract of indemnity, all that ought to
be asked for, is what would have been received. As a general
rule this is true ; but general rules are adopted, only as most
likely to promote the ends of justice. In some cases therefore,
the one in question is not attempted to be enforced, though the
insurer may pay more, or less than the injury sustained. In a
policy on goods, only prime costs and charges are recovered,
though interest, and profits have been lost. Under an insurance
on a ship, though she founder at the extreme part of the voyage
when greatly deteriorated, the full value, as at the commence-
ment is paid. *Shawe* v. *Felton*, 2 *East*. 109. And this very de-
cision shews what reliance can be placed on *Millar*, when he lays
down what is the English law ; for, in page 247 he says it must be
" the probable value of the ship at the date of the loss, with ex-
" pense of outfit." This position of his, is at war with all the
English, and with all our decisions. The cases in which freight
and ship are valued, are those of general average, arising be-
tween third persons, and not between assurer and assured. The
estimate is made to settle the proportion they are to pay of ano-
ther's loss, and not the value of their own goods for which they
have given a premium. Suppose an insurance on freight, an

NEW-YORK,
May, 1805.

E. Stevens
v.
C. I. Company.

abandonment, payment, deduction and restoration. Would not the owner of the goods be obliged to pay the underwriter on freight the full amount? This very point now contended for was agitated in Pennsylvania before judge Washington, and though a usage for the deduction was established, he ruled against it.

*Per curiam*, delivered by THOMPSON, J. I am inclined to think the assured is entitled to recover the gross amount of freight. Although indemnity is the leading object of insurance, it is not always the criterion by which to ascertain the amount of the loss. In an open policy on goods, the rule by which to estimate a total loss, is the invoice price, and all duties and expenses, till they are put on board, together with the premium of insurance. After a long voyage, and when the goods had almost reached a profitable market, it might with plausibility be urged, that the above rule would not afford an indemnity; but to depart from it, however reasonable and just it might appear in some cases, would lead to endless uncertainty and litigation. So, likewise, in an open policy on a vessel, her value at the time she sails, with the expense of her outfit and premium, is the rule by which to estimate a total loss. It has frequently, with great propriety been said, that in matters of commerce the plainest and simplest rules are always best.' They are easily learned, and easily obtained, and do not depend on any subtilties and niceties. No general rule giving a specific proportion of the freight, could with justice be adopted. It would operate unequally by reason of the great diversity in the distance and expense of voyages; and to adopt the net amount of freight as the rule, would lead to much litigation and uncertainty respecting the deductions to be made. But to take the gross amount of freight, as the rule of damages, would be equal, simple and easily ascertained. Mr. Justice *Lawrence*, in the case of *Shawe* v. *Felton*, says, the period to look to in order to ascertain the value of the subject matter of insurance, is when the vessel sails, and not the state of the thing at the time the total loss happens. The case of *Thompson* v. *Taylor*, may be considered, in some manner as illustrative of the practice in England on this subject. Some doubts have been raised, whether that was an open, or a valued policy. I think however that it is pretty evident it was an open policy. *Park** in his report of the case expressly so states it, and although it might be inferred from the statement of the case by *Durnford* and *East*, that it was a valued policy,

* Page 56, a. He was counsel in the cause.

yet it is alleged in the arguments of counsel to have been an open policy, and that circumstance is made the basis of some of their reasoning. The question there was, whether the assured's right to freight had commenced, the vessel being under a charter party to sail from London to Teneriffe and there take in her cargo, as she had been captured before her arrival at Teneriffe, before taking any of her cargo on board. The court determined that there was an inchoate right to freight the instant the vessel sailed from London, and the assured recovered the gross amount of the freight stipulated in the charter party. In that case we hear nothing respecting deductions, although the vessel had performed only a very small part of her voyage. Had the practice in England warranted such a claim, it would doubtless have been made. Upon the whole, I think, to take the gross amount of freight as the measure of damages is the least exceptionable rule, and most in unison with the acknowledged principles adopted in analogous cases, and not altogether without authority to support it. The opinion of the court therefore is, that the plaintiff have judgment upon the verdict of the jury, according to the stipulation in the case.